IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMAL BENNETT,  :  Plaintiff  :  : No. 1:22-cv-0354 v.  :  : (Judge Rambo) BRAD SHOEMAKER and  : MARK LUSK,  :  Defendants  : | |

# MEMORANDUM

Plaintiff Jamal Bennett initiated the above-captioned *pro se* action under 42 U.S.C. § 1983 regarding his pretrial detention in Lycoming County Prison (LCP). He asserts constitutional tort claims against two high-level county officials based on allegedly deficient medical care. Defendants move to dismiss Bennett's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendants' motion.

## I.   BACKGROUND

Bennett initially filed this civil rights complaint in the Court of Common Pleas of Lycoming County, Pennsylvania, in February 2022.[1] (*See* Doc. No. 1-2 at 3, 4.) In his original complaint, Bennett alleged that he was experiencing significant dental

---

[1] Bennett labeled the filing a "writ of habeas corpus (for conditions of confinement)." (*See* Doc. No. 1-2 at 4). Bennett, however, does not seek release from detention and thus his filing does not sound in habeas corpus. *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323-25 (3d Cir. 2020) (explaining that detainees seeking "release from detention" may proceed by way of a habeas petition challenging unconstitutional conditions of confinement, but only in "extraordinary circumstances").

problems while in detention and that LCP healthcare providers were deliberately indifferent to his serious medical needs. (*See* Doc. No. 1-2 at 5-9 ¶¶ 5-19; *id.* at 14-17 ¶¶ 32-40.)

Bennett initially named two defendants: Brad Shoemaker and Mark Lusk. According to Bennett's complaint, and confirmed by Defendants, Shoemaker is the Warden of LCP and Lusk is the elected Sheriff of Lycoming County. (*See* Doc. No. 1-2 at 4, 10 ¶¶ 2, 20; Doc. No. 8 at 10.) Following receipt of a copy of the state-court complaint, Shoemaker and Lusk removed the case to this Court on March 10, 2022. (*See generally* Doc. No. 1.)

Shoemaker and Lusk then moved to dismiss Bennett's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 3.) The Court granted their motion to dismiss and permitted Bennett to file an amended complaint "*only to the extent* that [his amended pleading] is confined to his claims of deliberate indifference to serious medical needs" during his detention at LCP. (Doc. No. 18 at 12.)

Following numerous procedural difficulties and delays caused by Bennett's prison transfers and his repeated failure to inform the Court of his new addresses, (*see, e.g.*, Doc. Nos. 24, 26-28), Bennett filed an unsigned amended complaint on January 30, 2023, (*see generally* Doc. No. 29.) Like his original complaint, the gravamen of Bennett's amended complaint is that he was allegedly provided inadequate dental care while in pretrial detention at LCP. (*See id.* at 2-5.) In addition

to Shoemaker and Lusk, Bennett names seven additional defendants: Nancy L. Butts, Kristin Rogers, Ryan Gardner, Maelynn Murphy, Andrea Hoover, Shawn P. McGlaughlin, and Evangelical Medical Services Organization. (*See id.* at 2.) None of these new defendants has been served, and therefore they are currently not parties to this litigation. (*See* Doc. Nos. 39, 41, 42, 44-47.)

In his amended complaint, Bennett appears to assert two constitutional tort claims: (1) Fourteenth Amendment[2] deliberate indifference to serious medical needs, (*see* Doc. No. 29 at 5-6); and (2) conspiracy to interfere with civil rights under 42 U.S.C. § 1985, (*see* Doc. No. 29 at 10-14.) Bennett includes an additional "count" for "supervisor liability," (*see id.* at 6-7), but—as the name suggests—this is a theory of liability for the medical indifference claim, not a separate constitutional tort. He seeks compensatory damages, punitive damages, and attorney fees and costs. (*Id.* at 15.)

Shoemaker and Lusk (collectively "Defendants") again move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is fully briefed and ripe for disposition.

---

[2] Because Bennett was a pretrial detainee during the events at issue, any such deficient medical care claim would fall under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *See Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008) (*Hubbard II*) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (*Hubbard I*). Bennett likewise cites the Fourteenth Amendment's Due Process Clause. (*See* Doc. No. 29 at 5.)

## II. STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled

4

to the assumption of truth" and may be disregarded. *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 681.

Because Bennett proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when the *pro se* litigant, like Bennett, is incarcerated. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

### III. DISCUSSION

Bennett's initial complaint was dismissed because he failed to allege personal involvement or supervisory liability for the purportedly unconstitutional dental care. (*See* Doc. No. 18 at 4-8.) His amended complaint fails for many of the same reasons. The Court additionally notes that, when confronted with Defendants' pending Rule 12(b)(6) challenges, Bennett failed to provide any substantive response. His brief in opposition to the instant motion to dismiss raises completely unrelated matters, including: contending that Defendants have not complied with discovery requests,

questioning the status of defense counsel's law licenses, and asserting irrelevant and nonsensical claims regarding the Uniform Commercial Code. (*See* Doc. No. 37 at 10-13, 15-18.) The Court, therefore, must gauge the sufficiency of Bennett's claims without any substantive counterarguments from Bennett.

### A.    Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556. U.S. 662, 676 (2009) (affirming same principle in *Bivens* context). Rather, a Section 1983 plaintiff must plausibly plead facts that demonstrate the defendant's "personal involvement in the alleged misconduct." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through evidence of "personal direction" or "actual knowledge and acquiescence"; however, such averments must be made with particularity. *Id.* (quoting *Rode*, 845 F.2d at 1207). Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability. *See id.* (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x

6

923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

Nowhere in the amended complaint does Bennett plausibly allege that Defendants had any personal involvement in his purportedly deficient dental care at LCP. As to Shoemaker, Bennett's primary contention regarding personal involvement is that he filed a grievance in the matter that Shoemaker ultimately denied. (*See* Doc. No. 29 at 6-7, 12, 13.) But mere involvement in the grievance process (including denial of a grievance) does not implicate Section 1983 liability. *See Dooley*, 957 F.3d at 374. Bennett additionally asserts that Shoemaker "is the employer of" the medical providers and thus "he is responsible for his staff's actions." (Doc. No. 29 at 13.) This allegation, however, is a quintessential example of *respondeat superior* liability, which is inapplicable in Section 1983 claims. *See Rode*, 845 F.2d at 1207.

Bennett's allegations regarding Lusk's personal involvement are even more attenuated. As noted above, Lusk is the Sheriff of Lycoming County, and Bennett has not plausibly explained how Lusk played any role in Bennett's pretrial dental care. Bennett's sole contention appears to be that Lusk was informed of Bennett's dental complaints when his grievance appeal was "sent, with all the other documents,

7

to the Prison Board," of which Lusk is a member. (*See* Doc. No. 29 at 2, 7.) Being informed of a prison grievance denial falls woefully short of pleading personal involvement in the provision of constitutionally deficient medical care.

### B.  Deliberate Indifference

The failure to allege personal involvement naturally leads to another reason why Bennett has failed to state a Fourteenth Amendment claim against Defendants. To plausibly plead a claim for deliberate indifference to serious medical needs, a plaintiff must allege (1) "a serious medical need," and (2) "acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Bennett was under the care of multiple medical professionals at LCP, as he plainly admits in his amended complaint. By failing to identify any personal involvement by Defendants in his purportedly deficient medical care, he therefore has not plausibly alleged that Defendants acted with deliberate indifference to his medical needs. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (finding that failure by nonmedical prison officials to respond to medical complaints from prisoner-plaintiff "already being treated by the prison doctor" does not establish deliberate indifference). Bennett's amended complaint thus lacks any plausible facts showing that Shoemaker or Lusk were personally involved in the constitutional violation or deliberately indifferent to his serious medical needs.

### C. Supervisory Liability

As detailed above, Bennett has failed to allege that Defendants were personally involved with his purportedly deficient dental care. Nevertheless, a plaintiff may bring a Section 1983 claim against a government official who "with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (second alteration in original) (citation omitted). Bennett attempts to assert supervisory liability. (*See* Doc. No. 29 at 6-7.) Once again, however, he has failed to plead facts sufficient under *Twombly* and *Iqbal* to state such a theory of liability against either Shoemaker or Lusk.

Bennett's first problem is that, similar to his initial complaint, he has not adequately identified the contours of any purported unconstitutional policy or practice implemented by Defendants. At one point in his amended complaint, Bennett claims that the "actions of Hoover, Murphy, and Shoemaker resulted in a [sic] unconstitutional violation that was implemented into a policy statement, ordinance, regulation, custom, or decision officially adopted by county commissioners where constitutional deprivations were pursuant to their governmental custom, even though such custom had not received formal approval through the bodys [sic] decision making [sic] channels." (Doc. No. 29 at 8.) This

sentence is both confusing and conclusory, and it is insufficient to state an unconstitutional policy or practice.

In another part of his pleading, Bennett comes closer to identifying a policy or custom. He asserts that "L.C.P, Prison Board, and county comm. has [sic] a policy or custom that encompassed the inadequate training or hiring of medical staff with respect to dental matters—diagnosing and x-rays," including "inadequate training of nurses/LPNs with respect to placing the notes of such matters in the prisoners [sic] /my medical file." (*Id.* at 9.)

Alleging "inadequate training or hiring with respect to dental matters" is far too broad and conclusory to plausibly state an unconstitutional "failure-to-train" policy. It is, as the Third Circuit has described it, "merely a rote recitation of a cause of action coupled with a legal conclusion," and therefore must be disregarded. *Jankowski v. Lellock*, 649 F. App'x 184, 188 (3d Cir. 2016) (citation omitted) (nonprecedential). After all, any inmate who experiences what he believes to be "inadequate" medical care could allege that high-level prison officials failed to properly "train or hire" medical staff. But without actual supporting facts, this is merely a legal conclusion and does not state a claim for relief. Furthermore, as the Court noted when dismissing Bennett's original complaint, alleging that there is inadequate training with respect to nurses placing proper notes in medical files,

10

without more, does not plausibly state a *constitutionally* violative policy. (*See* Doc. No. 18 at 6-7.)[3]

Bennett's second deficiency with his supervisory liability theory is that he does not explain how Defendants were involved in promulgating any purported practice or custom. "A policy is made 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" *Natale*, 318 F.3d at 584 (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials [are] so permanently and well-settled as to virtually constitute law." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (alteration in original) (citations omitted). "Custom requires proof of knowledge and acquiescence by the decisionmaker." *Id.* (citations omitted).

Bennett indiscriminately assigns responsibility for the failure-to-train "policy or custom" to LCP, the Prison Board, and the County Commissioners. (*See* Doc. No. 29 at 9.) As for the County Commissioners, whom Bennett identifies as "Rick Mirabito, Scott Metzger, [and] Anthony Mussare," (*see id.* at 6), none of these

---

[3] In another section of the amended complaint, Bennett alleges that there was a "policy, rule, regulation, custom, ordinance" requiring medical providers to "provide [M]otrin for a period of seven days in order for [prisoners] to go to commissary in order to purchase ibuprofen for the pain." (Doc. No. 29 at 3.) Bennett does not allege who promulgated this policy or how it would violate a prisoner's constitutional rights.

11

individuals are named as defendants in this case. Nor is Lycoming County Prison identified as a defendant. Furthermore, the only relevant member of the "Prison Board" for the instant motion to dismiss is Lusk. But Bennett does not plausibly allege facts that would demonstrate how Lusk—the Sheriff of Lycoming County—was responsible for medical staff training or hiring at LCP, let alone that Lusk was deliberately indifferent to prisoners' rights concerning these tasks. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989).[4] Merely alleging that Lusk sits on the Prison Board does not establish that he was a decisionmaker who created or enforced a policy or custom with respect to medical training and hiring at LCP. *See McTernan*, 564 F.3d at 658-59 (noting that plaintiff attempting to assert unconstitutional policy or custom must connect such allegations to a decisionmaker).

Finally, to the extent that that Bennett is asserting official capacity claims against Defendants, (*see* Doc. No. 29 at 1, 2), those claims fail for the same reasons supervisory liability fails. An official capacity claim against a prison official is akin to suing the "entity of which [the] officer is an agent." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978). Here, that entity is Lycoming County, a "local government unit." *Id.* at 690. To assert a Section 1983 claim against

---

[4] Bennett included a copy of the contract made with Evangelical Medical Services to provide medical care at LCP, (*see* Doc. No. 29 at 16-21), but that contract is executed by the County Commissioners, not the Prison Board. Moreover, nothing in the contract regarding the hiring of Evangelical Medical Services to provide medical care at LCP evinces inadequate training or hiring on its face.

12

Lycoming County, Bennett must identify a policy or custom emanating from this entity that caused him constitutional injury. *See id.* at 690-91; *Natale*, 318 at 583-84. As explained above, Bennett has not plausibly alleged a policy or custom that caused him constitutional injury. And even if he had, he has not plausibly alleged that Shoemaker or Lusk were decisionmakers with respect to the conclusory "failure to train" claim. So any official capacity claims must also be dismissed.

### D. Section 1985 Conspiracy

Bennett's second cause of action is labeled as "Conspiracy to Deprive Under 1985." (Doc. No. 29 at 10.) Bennett appears to be asserting a conspiracy claim under 42 U.S.C. § 1985(3), as none of the other subdivisions of Section 1985 apply.

"Section 1985(3) permits an action to be brought by one injured by a conspiracy formed for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (internal quotation marks and citation omitted). To state such a claim, a plaintiff must plausibly allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Id.*

13

(citation omitted). A plaintiff seeking to assert a Section 1985(3) claim "must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Id.* at 135.

Bennett's Section 1985(3) conspiracy claim suffers from multiple deficiencies. First, he does not identify a class to which he belongs that was allegedly discriminated against by LCP officials. It is well settled that prisoners do not qualify as a suspect class for equal protection claims. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (*en banc*) (explaining that neither prisoners nor indigents are suspect classes for Fourteenth Amendment equal protection purposes).

Second, Bennett has not plausibly alleged a conspiracy. To state a claim for conspiracy, a plaintiff must do more than recite talismanic phrases like "conspire" and "act in concert." *See Jutrowski v. Township of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018) (explaining that, to state a civil conspiracy claim, a plaintiff must demonstrate that defendants "somehow reached an understanding to deny [the plaintiff] his rights" (alteration in original)); *Adams v. Corr. Emergency Response Team*, 857 F. App'x 57, 61 (3d Cir. 2021) (nonprecedential) (explaining that, to state a Section 1985 conspiracy claim, a plaintiff must sufficiently allege "facts and circumstances" that "support the elements of the conspiracy" and show agreement

between defendants to deprive a plaintiff of a constitutional right); *Stankowski v. Farley*, 251 F. App'x 743, 748 (3d Cir. 2007) (nonprecedential) (finding that "conclusory allegation" that defendants "conspired" against him fails to state a claim for civil conspiracy).

Bennett's "formulaic recitation of the elements" does not meet the pleading requirement for stating a Section 1985(3) conspiracy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (explaining that courts must "disregard threadbare recitals of the elements of a cause of action" (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012))). His amended complaint contains conclusory assertions like "the defendants were all engaged in a joint venture," (Doc. No. 29 at 4, 10), or that they "reached an understanding to deprive [Bennett] of his rights," (*id.* at 11), but none of these conclusory statements plausibly alleges facts and circumstances that support the elements of a conspiracy. *See D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992) (finding that conclusory allegations of conspiracy are not sufficient to state a § 1985(3) claim); *Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 944, 948-49 (3d Cir. 2019) (nonprecedential) (same).

Finally, Bennett does not plead any facts that would demonstrate that the alleged conspiracy was motivated by invidious discrimination against an identifiable

15

class. *See Farber*, 440 F.3d at 135. For all these reasons, Bennett's Section 1985(3) claim is fatally flawed. Dismissal will be with prejudice, as leave to amend would be futile. Neither Bennett's original nor amended complaint even hint at invidious discrimination toward a suspect class that would implicate a Section 1985(3) conspiracy.

### E. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile." *Grayson*, 293 F.3d at 114. Bennett has already been granted leave to amend and given numerous extensions in which to file that amended pleading. Further leave to amend will be denied because he has failed to cure the deficiencies with his complaint even after "amendments previously allowed." *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile"). Moreover, with respect to Bennett's Section 1985(3) claim, leave to amend would be futile because Bennett cannot establish an identifiable class against which prison officials have conspired to invidiously discriminate.

A final note is in order. This lawsuit has been pending for approximately a year and a half, but Bennett has failed to progress beyond the pleading stage. The

crux of this case concerns allegedly inadequate dental care received during a finite period of pretrial detention, a fact that Bennett admits.  (*See* Doc. No. 37 at 4.)  Bennett's attempt to lay blame on high-level prison or county officials has failed twice because he is unable to allege facts that would state a plausible Section 1983 claim against them.  Although Bennett seems to desire to sue nearly everyone involved with prison administration in Lycoming County, his allegations of deliberate indifference to serious medical needs involve only a few medical providers—specifically, Dr. Shawn P. McLaughlin and nurse Maelynn Murphy.  (*See* Doc. No. 29 at 2-5.)  These medical defendants, however, have yet to even be served.  Bennett would do well to focus his efforts on serving his amended complaint on the defendants who played an actual role is his purportedly deficient care, lest those defendants are once again dismissed under Federal Rule of Civil Procedure 4(m) for failure to timely effect service.  (*See* Doc. No. 47.)

## IV. CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion (Doc. No. 30) to dismiss the complaint under Rule 12(b)(6).  All claims against Shoemaker and Lusk will be dismissed with prejudice.  An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: August 23, 2023